# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

## CIVIL ACTION NO. 3:12-CV-141-R

TAMMY BOWLING                                                                PLAINTIFF

V.

CAROLYN COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY              DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Tammy Bowling, filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her application for supplemental security income and disability insurance benefits. At issue is whether the ALJ erred when determining that Ms. Bowling retains the residual functional capacity to perform sedentary work with certain restrictions due to her physical and psychological impairments. Ms. Bowling asserts that the Administrative Law Judge failed to afford appropriate weight to the opinion of her treating physician and improperly discounted her subjective assessment of her pain and degree of psychological impairment. After reviewing the the administrative record, the Court will affirm the decision of the Commissioner of Social Security.

## I.

Ms. Bowling filed her application for benefits on March 17, 2010,[1] alleging that she became disabled on October 2, 2005.[2] In her application, Ms. Bowling stated that she was currently unable to work, and initially had stopped working, due to panic attacks, depression and

---

[1] Administrative Record ("Admin. R.) at 67-68, 98-103 (docket no. 15).
[2] Admin. R. at 98, 122, 127.

bipolar disorder.³ Her requests for benefits were denied initially and on review, so she timely requested a hearing before an administrative law judge ("ALJ").

Ms. Bowling's hearing took place on February 3, 2011.⁴ She was represented by counsel at the hearing and testified, as did a vocational expert retained by the Social Security Administration.⁵ On March 31, 2011, the ALJ entered an opinion that Ms. Bowling was not disabled because she has the residual functional capacity to perform certain types of sedentary work.⁶

Ms. Bowling timely appealed at both the administrative level and to this Court.

## II.

A district court may not try a Social Security appeal *de novo*, or resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984). Rather, the Court must affirm the conclusions of the Commissioner of Social Security absent a determination that the ALJ who made the determination regarding Ms. Bowling's entitlement to benefits failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jordan,* 548 F.3d at 422 (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

With respect to the correct legal standards, ALJs must perform a five-step analysis to determine whether a claimant is disabled within the meaning of the Social Security Act:

1. If the claimant is engaged in substantial gainful activity, she is not disabled.

---

³ Admin. R. at 127; *but see* Admin. R. at 140 (Ms. Bowling's Pain and Daily Activities Questionnaire).
⁴ Admin. R. at 32-63.
⁵ *Id.*
⁶ Admin. R. at 17-25.

2

2. If the claimant is not engaged in substantial gainful activity, but her impairment is not "severe," she is not disabled.

3. If the claimant is not engaged in substantial gainful activity and is suffering from a "severe" impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. Otherwise, if the claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

20 C.F.R. § 404.1520; *see also Jordan,* 548 F.3d at 422.

The claimant bears the burden of proof with respect to the first four steps. *Jordan*, 548 F.3d at 422. The burden shifts to the SSA with respect to the fifth step, however, and at that step the Social Security Administration bears the burden of proving that there are available jobs in the national economy that the claimant is capable of performing. *Id.* at 423 (citing *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391-92 (6th Cir.1999)).

## III.

In his opinion, the ALJ determined that, although Ms. Bowling listed only her psychological impairments in her applications for benefits,[7] Ms. Bowling suffers from the severe physical impairment of degenerative disc disease, in addition to depressive and anxiety disorders, and polysubstance abuse in full sustained remission.[8] The ALJ further determined that none of these impairments, individually or in combination, meet or equal listed impairment.[9] Ms. Bowling does not object to either of these findings.

---

[7] Admin. R at 127.
[8] Admin. R. at 19-21.
[9] Admin. R. at 19-21.

She does, however, challenge Finding 5[10] in which the ALJ determined that she has the residual functional capacity to perform sedentary work with certain exertional and nonexertional limitations designed to accommodate the effects of her physical and psychological impairments.[11] Ms. Bowling specifically asserts that the ALJ erred by failing to give the opinion of her treating physician controlling weight and by failing to accept as credible her complaints of pain and psychological limitations.

## IV.

In his opinion, the ALJ observed that Ms. Bowling retains the residual functional capacity to perform sedentary work, with several restrictions necessary to accommodate her mental and physical impairments:

> [S]he can lift 10 lbs; stand/walk 2 hours in an 8 hour day; sit 6 hours in an 8 hour day; cannot climb ladders, ropes, and scaffolds; cannot be exposed to heights or machinery; cannot operate a motor vehicle; can understand and recall simple and some detailed work procedures and instructions, maintaining attention for two hour periods across a normal workday; can complete routine mental aspects, making associated work-related decisions, without special supervision, following a regular schedule; can tolerate coworkers and accept supervision in an object focused context with infrequent and casual contacts; and can adapt to gradual change and appreciate work hazards on the job described.[12]

In determining that Ms. Bowling remains capable of performing some types of work, the ALJ largely discounted the available medical opinions in the record as inconsistent with other objective medical evidence in the record, and dismissed as not fully credible Ms. Bowling's assessment of her physical and psychological limitations. The Court concludes that this assessment is supported by the evidence in the record as a whole.

---

[10] Ms. Bowling also challenges Findings 10 (that there exist jobs she can perform despite her limitations) and 11 (that she is not disabled as a matter of law), but both of these Findings are integrally related to the ALJ's determinations in Findings 5.

[11] Admin. R. at 21-24.

[12] Admin. R. at 21.

## A. Whether the ALJ Erred by Failing to Give the Opinions of Ms. Bowling's Treating Physician Controlling Weight

In his opinion, the ALJ largely rejected the conclusions of the only two medical doctors to evaluate Ms. Bowling's physical functional capacity. He found the opinion of Ms. Bowling's treating physician to be too limiting based on the other medical evidence in the record, and the opinion of the state agency consulting physician to be not limiting enough.

The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the opinion of the claimant's treating source. 20 C.F.R. §§ 404.1527(d), 416.927(d). When a treating source's opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence in the record, it should receive controlling weight. *See* Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Cole v. Comm'r of Soc. Sec.,* 661 F.3d 931, 937 (6th Cir. 2011). If an ALJ determines that a treating source's opinion is not entitled to controlling weight, he must nonetheless determine how much weight the opinion is entitled to, and must set forth in the administrative decision good reasons for the weight given to that medical opinion. Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Wilson v. Commissioner of Social Security,* 378 F.3d 541, 545-546 (6th Cir. 2004).

### 1. The Opinion of Ms. Bowling's Treating Physician

In 2010, Dr. Jim Sharp, who at that time had been Ms. Bowling's treating physician for seven years,[13] filled out forms in which he stated that Ms. Bowling is unable to work in any

---

[13] *See* Admin. R. at 543-49, 599-605, 615-717.

capacity due to chronic degenerative joint disease that will continue to worsen with time.[14] Dr. Sharp also enumerated several exertional, postural, and nonexertional limitations on her ability to work,[15] which would preclude all employment, according to the vocational expert who testified at her hearing.[16] The ALJ gave Dr. Sharp's opinions little weight however, because the ultimate determination of disability is an issue reserved for the Commissioner of Social Security, and because Dr. Sharp's assessments of Ms. Bowling's specific limitations due to the condition of her neck:

> [A]ppear to be based upon the claimant's subjective complaints, as they are inconsistent with the remote diagnostic testing, mildly abnormal clinical examination, and conservative treatment. [Dr. Sharp's] records contain no findings or tests…[and] no results of examinations by this Doctor.[17]

Although there exists some evidence that suggests that this analysis may be overly-broad,[18] the ALJ's statements nonetheless are supported by the documents in the Administrative Record.[19]

Contrary to Ms. Bowling's assertions, the ALJ's opinion demonstrates that he reviewed and considered the results of both of her MRIs, each of which indicated that she had a bulging disc in her cervical spine.[20] As the ALJ correctly observed, however, both MRI's were performed many years before Ms. Bowling applied for benefits and neither report conclusively determined that there exists any resulting impingement of Ms. Bowling's nerves.[21] There have been no recent MRIs performed, and the few physical assessments of the condition of Ms.

---

[14] Admin. R. at 545 (Ms. Bowling's application to have certain loans discharged), 601-604 (Medical Assessment of Ability to Do Work-Related Activities), 630 (An information form requested by Louisville Metro Human Services).
[15] *Id.*.
[16] Admin. R. at 60.
[17] Admin. R. at 23.
[18] *See, e.g.,* Admin. R. at 331-361.
[19] Admin. R. at 141, 343, 408 (Ms. Bowling is prescribed Motrin for her pain, not a stronger narcotic), 411 (Ms. Bowling is prescribed naproxen and ice packs for pain), 543-49, 599-605, 615-717, 748.
[20] Admin. R. at 22-23, 343, 748.
[21] *Compare* Admin R. at 343 (stating that a disc material at C7 *appears* to be in direct contact with the nerve root), *with* Admin. R. at 748 (noting only bone spurs at C6-7, and stating "there is no evidence of significant disc pathology, central canal or foraminal stenosis").

Bowling's spine (particularly her neck) indicate minor, if any, impairment of her range of motion, and normal grip strength in both hands.[22] Dr. Sharp's records contain no discussion of any objective tests of the extent to which Ms. Bowling's range of motion is limited by the condition of her cervical spine, and do not document any worsening of her condition during the course of his treatment.[23] The Court therefore concludes that the ALJ did not err when he gave Dr. Sharp's opinions less than controlling weight, and that he properly explained his reasons for doing so.

### 2. The Opinion of the Examining Consultant

The ALJ also gave little weight to the opinion of Dr. Jeffery Fadel, who performed a consultative examination of Ms. Bowling on behalf of the Department for Disability Determination in May 2010, and stated he believed that the condition of Ms. Bowling's neck is not disabling and should not limit her in any way.[24] The ALJ discounted the value of Dr. Fadel's opinion because "the evidence supports that the claimant is more limited as set out in the residual functional capacity assessed herein"[25] This decision is supported by the evidence in the record. Dr. Fadel did not have, and therefore did not review, the results of Ms. Bowling's MRIs, both of which conclusively establish the presence of a bulging disc in her cervical spine.[26] Nor, apparently, did Dr. Fadel have the records documenting her early attempts to gain relief by undergoing a series of epidural pain treatments.[27]

The ALJ accurately cited evidence in the record that is sufficient to establish that Ms. Bowling suffers from some pain due to the condition of her cervical spine, and that this pain is

---

[22] Admin. R. at 339, 496, 518, 547-49, 599, 605.
[23] *See* Admin. R. at 547-49, 615-717.
[24] Admin. R. at 517-19.
[25] Admin. R. at 23.
[26] Admin. R. at 519.
[27] Admin. R. at 333-361, 517-19.

7

not insubstantial and is limiting.[28] Accordingly, there exists substantial evidence to support the ALJ's decision to accord little weight to Dr. Fadel's opinion.

   B. **Whether the ALJ Failed to Follow Social Security Ruling 95-5p When He Did Not Fully Accept Ms. Bowling's Subjective Assessment of her Pain and Psychological Limitations.**

Ms. Bowling also asserts that the ALJ's decision did not afford sufficient credibility to her claims and testimony regarding the effects of her pain and her psychological impairments. The Sixth Circuit has recently affirmed that "subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r Soc. Sec.*, 336 F.3d 469, 475(6th Cir. 2003); *see also* Titles II and Xvi: Considering Allegations of Pain and Other Symptoms in Residual Functional Capacity and Individualized Functional Assessments and Explaining Conclusions Reached, SSR 95-5P (S.S.A Oct. 31, 1995).[29]

That being said, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. Furthermore, the district court must "accord the ALJ's determinations of credibility

---

[28] Admin. R. at 23,
[29] Social Security Ruling 95-5p states, in pertinent part:

>   Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.
>   The RFC assessment … must describe the relationship between the medically determinable impairment(s) and the conclusions regarding functioning which have been derived from the evidence, and must include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence.
>   In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's complaints solely on the basis of such personal observations. Rather, in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work ….

8

great weight and deference particularly since the ALJ has the opportunity, which [the district court does] not of observing a witness's demeanor while testifying." *Id.* Consequently, the district court is limited to evaluating whether or not an ALJ's explanations for partially discrediting Ms. Bowling's claims and testimony are reasonable and supported by substantial evidence in the record. *Id.*

The ALJ determined that Ms. Bowling's statements about "the intensity, persistence and limiting effects of [her] symptoms are not credible" to the extent they are inconsistent with his determination that she can perform a limited range of sedentary work.[30] With respect to her complaints of pain and decreased range of motion, he noted – accurately – that she has suffered no loss of grip strength or sensation, that her pain has been treated solely with medication for the past few years, that she did not appear to be in pain or even change position during the one-hour hearing, and that she acknowledged improvement of her pain with medication.[31] It is also noteworthy that Ms. Bowling initially applied for benefits solely on the basis of her psychological impairments.[32]

With respect to Ms. Bowling's mental impairments, the ALJ also correctly observed that Ms. Bowling responded appropriately to questions during the hearing and appeared to have no difficulty staying on point.[33] He also reviewed journal entries she completed during treatment for substance abuse, and accurately observed that her entries "illustrate that she can concentrate and retain fairly complicated text and apply that information during her remission from controlled substance addiction."[34] The ALJ correctly noted that the consulting psychological examiner deemed Ms. Bowling's overall functioning to be moderately to seriously impaired, but

---

[30] Admin. R. at 22.
[31] Admin. R. at 22-23, 46, 141.
[32] Admin. R. at 127.
[33] *See generally* Admin. R. at 33-56.
[34] Admin. R. at 23, 266-307.

rejected the consultative examiner's assessment of Ms. Bowling's work-related functional limitations because they were inconsistent with her "mildly abnormal mental status examination and conservative treatment,"[35] and were largely based on Ms. Bowling's own subjective assessment of her abilities.[36] The ALJ also discounted the value of the psychological examiner's conclusion with respect to Ms. Bowling's overall level of functioning, because the consulting examiner assessed Ms. Bowling's attention and memory as normal, albeit with scattered concentration; deemed her speech flow, thought content, organization of thought, capability for decision-making, and fund of information normal; and assessed her judgment as fair and her reality testing adequate.[37]

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, the claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (1997). The ALJ observed and accurately cited such contradictions in the record. Accordingly, the magistrate judge finds nothing improper about the ALJ's decision to discount Ms. Bowling's credibility with respect to her claims regarding the severity of her impairments and the restrictions they impose on her ability to earn a living.

## V.

As noted above, the Court cannot try this case *de novo,* or remand the case simply because there exists sufficient evidence to support a conclusion different than the one reached by the ALJ. Rather, if there exists substantial evidence in the record to support the ALJ's decision, and there has been no error of law, the Court must affirm. *Jordan,* 548 F.3d at 422.

---

[35] Admin. R. at 23-24.
[36] *See* Admin. R. at 523.
[37] Admin. R. at 523.

10

The Court concludes that, although there exists evidence in the record that Ms. Bowling suffers from painful degenerative disc disease, as well as panic attacks and depression, there also exists substantial evidence in the record to support the ALJ's conclusions that those conditions are not as limiting as Ms. Bowling alleges. Consequently, the Court finds no basis to set aside or remand the decision of the Commissioner of Social Security, pursuant to 42 U.S.C. §405(g).

The Court will enter an order consistent with this Memorandum Opinion.

DATE:

cc: counsel of record